UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID L. BOYD, Plaintiff, | ) | |
| v. | ) | No. 1:23-cv-02174-JPH-TAB |
| JACK SURGUY Sgt., J. BEATTY Sgt., Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff David Boyd, an inmate at Pendleton Correctional Facility, alleges that Defendants violated his constitutional rights by spraying him with oleoresin capsicum ("OC") and not allowing him to shower immediately thereafter. Defendants have moved for summary judgment. Dkt. [30]. Mr. Boyd did not respond. For the reasons below, that motion is **GRANTED**.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff did not file a response or designate evidence in response to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

### A. Parties

When the events related to Mr. Boyd's claims occurred, Mr. Boyd was an inmate at Pendleton housed in G Cellhouse. Dkt. 31-1 at 13 (Boyd deposition part 1). During that same time, Sgt. Beatty and Lt. Surguy were correctional officers in G Cellhouse. Dkt. 31-3 ¶¶ 4-5 (Beatty affidavit); dkt. 31-4 ¶ 3 (Surguy affidavit); dkt. 31-2 at 19 (Boyd deposition part 2).

### B. First OC Spray Incident

Late in the evening of October 2, 2023, Mr. Boyd was deliberately flooding his cell by clogging his toilet, demanding that he be provided a suicide-watch companion. Dkt. 31-1 at 20. Shortly after 11 p.m., Sgt. Beatty came to Mr. Boyd's cell, refused to get a companion for Mr. Boyd, then walked away. *Id.* at 21-22. When Mr. Boyd continued flooding his cell, Sgt. Beatty moved Mr. Boyd into a shower stall. *Id.* at 22.

At approximately 12:40 a.m. on October 3, Mr. Boyd was told he was going to be returned to his cell. Dkt. 31-3 ¶ 9; dkt. 31-1 at 26. Mr. Boyd began protesting, saying "I'm not going back. You are going to have to make me go back. And if I do go back, I am going to continue to flood my range, flood the cell again, and cause hell." Dkt. 31-1 at 27. When Sgt. Beatty told Mr. Boyd to turn around and prepare to be cuffed up, Mr. Boyd spit at or towards Sgt. Beatty, or made Sgt. Beatty think he was going to spit.[1] Sgt. Beatty asked

[1] Mr. Boyd's designated deposition testimony on this point is inconsistent. At first, he seemed to deny spitting at all, accusing Sgt. Beatty of "lying" when he said Mr. Boyd

another officer to get a spit mask for Mr. Boyd. Dkt. 31-3 ¶ 12. When Mr. Boyd still did not turn around and appeared to continue to be attempting to spit on Sgt. Beatty, Sgt. Beatty deployed a one-second burst of oleoresin capsicum ("OC") spray to deter his spitting attempts. *Id.* ¶ 13. When Mr. Boyd continued spitting or attempting to spit, Sgt. Beatty deployed another one-second burst of OC spray. *Id.* ¶¶ 14-15.

After Mr. Boyd was sprayed, non-defendant officers took him for a medical evaluation. Dkt. 31-1 at 22; dkt. 31-3 ¶ 17. Mr. Boyd told the nurse he was not in any pain, except for in his hand which hurt from having punched a wall on another day. Dkt. 31-6 at 2. After being cleared by a nurse and given 650 mg acetaminophen, *id.*, Mr. Boyd was taken back to his cellhouse and placed in a different shower stall. Dkt. 31-1 at 37-38. The shower in this stall was turned off because of Mr. Boyd's threats to cause flooding. Dkt. 31-2 ¶ 23. The parties dispute whether Mr. Boyd had a decontamination shower after this incident. *Id.* ¶ 19; dkt. 31-1 at 44.

Mr. Boyd and Sgt. Beatty had no more interactions after Mr. Boyd was returned to his cellhouse following the medical evaluation. Dkt. 31-1 at 42-43; dkt. 31-2 ¶ 26. Any decision as to how long Mr. Boyd was to remain in the shower stall was made by the Shift Office and not Sgt. Beatty. Dkt. 31-2 ¶ 22.

---

attempted to spit on him. Dkt. 31 at 22-23. Later, he testified, "I spit at the door inside the shower to make them get back." *Id.* at 31. Then, he testified, he just made a "noise" that he was going to spit, to "intimidate" Sgt. Beatty and dissuade him from attempting to remove Mr. Boyd from the shower. *Id.* at 32.

Mr. Boyd repeatedly made threatening comments to officers who came by the shower stall. *Id.* ¶¶ 21, 25.

**C. Second OC Spray Incident**

When Sgt. Surguy began his shift at 6 a.m., Mr. Boyd was still in the shower stall. Dkt. 31-4 ¶ 4. At some point, Sgt. Surguy overheard Mr. Boyd having an argument with another officer, including threatening to spit on the officer. *Id.* ¶ 6; dkt. 35 at 0:00 to 0:14 (Video of shower stall).[2] After talking to the other officer, Sgt. Surguy went to the shower stall. Dkt. 31-4 ¶ 7; dkt. 35 at 1:35. Mr. Boyd repeatedly pushed things through the cuff port, put his hands through the cuff port (sometimes swinging his hand), and grabbed hold of the cuff port to keep it open. Dkt. 31-4 ¶ 8; dkt. 35 at 1:40-2:15. It is a safety and security risk for inmates to reach through a cuff port. Dkt. 31-4 ¶ 13. Mr. Boyd also was threatening to kill Sgt. Surguy and his family, and threatened to throw feces on Sgt. Surguy. *Id.* ¶¶ 7, 10.

Sgt. Surguy attempted to remove Mr. Boyd's hand from the cuff port but was unable to do so. Dkt. 31-4 ¶ 8; dkt. 35 at 1:40-2:15. Sgt. Surguy then deployed OC spray into the shower stall through the cuff port—it is ineffective to use the spray through the grating above the cuff port—for approximately two seconds. Dkt. 31-4 ¶ 8; dkt. 35 at 2:10. Sgt. Surguy then ordered Mr. Boyd to be prepared to be restrained, but Mr. Boyd refused to cooperate. Dkt. 31-4 ¶ 9-

[2] There is no sound in the video, but the officer outside the cell can be seen speaking to Mr. Boyd, then making a dismissive gesture and walking away. There also is no time stamp on the video, which runs for 40 minutes and ends before Mr. Boyd is removed from the shower.

10. Sgt. Surguy then deployed a second blast of OC spray, for approximately one second. Dkt. 35 at 2:30. Mr. Boyd continued grasping onto the cuff port so it could not be closed. *Id.* at 2:30-3:20. Sgt. Surguy was able to remove Mr. Boyd's hand and shut the cuff port; Mr. Boyd's hand was not in the cuff port when it was closed. *Id.* at 3:20-3:25.

The cuff port on this shower stall could not be securely locked from the outside. Dkt. 31-4 ¶ 15. At first, Sgt. Surguy held the cuff port closed as Mr. Boyd attempted to push it back open. Dkt. 31-4 ¶ 12; dkt. 35 at 3:25-3:55. Then, Sgt. Surguy and another officer put a mobile plastic shield in front of the shower stall. *Id.* at 3:55-4:05. The shield is u-shaped, and about as tall as and a little wider than a shower stall. *Id.* The shield is open at the top and bottom, and has a hole cut out in the front to allow for air flow. *Id.* The shield did not lie flat against the shower stall door and did not block airflow into the stall. *Id.* Mr. Boyd pushed open the cuff port after the shield was in place, and also tried several times to move or push away the shield itself. Dkt. 31-4 ¶ 18.

About three minutes after Sgt. Surguy first used OC spray, he asked a passing nurse to examine Mr. Boyd. Dkt. 31-4 ¶ 16; dkt. 35 at 6:00. Mr. Boyd was argumentative and threatening towards her, so the nurse left without examining him. Dkt. 31-4 ¶ 16.

Sgt. Surguy was informed when his shift began that Mr. Boyd had been given a decontamination shower after the earlier OC incident. *Id.* ¶ 23. Sgt. Surguy did not turn off or otherwise control the water in Mr. Boyd's shower. *Id.*

At around 9 a.m., other officers came and took Mr. Boyd to have a decontamination shower. *Id.* ¶ 22.

**D. Procedural History**

Mr. Boyd proceeds on Eighth Amendment claims against Sgt. Beatty based on allegations that he did not allow Mr. Boyd to decontaminate after being sprayed with OC, and against Sgt. Surguy for the use of physical force and OC spray, and for then confining Mr. Boyd in a space without air flow. Dkt. 12 at 3. No claim against Sgt. Beatty for using OC spray proceeded past screening, and Mr. Boyd did not seek reconsideration of the screening order or amend his complaint. Defendants moved for summary judgment. Dkt. 30. Mr. Boyd did not respond. *See* dkt. 33 (notice of right to respond).

**III.**
**Discussion**

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

It is not cruel and unusual punishment for correctional officers to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). An officer may use small amounts of pepper or OC spray to compel a disobedient prisoner to leave a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable). But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270.

Defendants have designated as evidence video of the incident between Mr. Boyd and Sgt. Surguy. "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not

adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

**A. Sgt. Beatty**

The only claim proceeding against Sgt. Beatty is that he refused to allow Mr. Boyd to have a decontamination shower for 8 hours after using OC spray against him.

"To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). For this purpose, each defendant is considered independently. *Id.* Plaintiff receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). He must, however, "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.*

Here, even assuming that Mr. Boyd did not receive a decontamination shower after Sgt. Beatty used OC spray, the designated evidence indicates that Sgt. Beatty had no personal involvement in that decision. Other officers who are not defendants in this case took Mr. Boyd for his medical examination, and then back to G cellhouse, after which Mr. Boyd and Sgt. Beatty had no further interaction. Someone other than Sgt. Beatty turned the shower's water off because of Mr. Boyd's repeated threats to flood the range. And any decision about when or whether Mr. Boyd would be moved out of the shower stall was made by the Shift Office, not Sgt. Beatty. In sum, Mr. Boyd has not designated

evidence that would allow a reasonable jury to find that Sgt. Beatty was personally involved in any denial of a decontamination shower. *See Whitfield*, 76 F.4th at 706.

Sgt. Beatty is therefore entitled to summary judgment.

**B. Sgt. Surguy**

Mr. Boyd's claim against Sgt. Surguy alleges that he sprayed Mr. Boyd twice with OC. Defendants have designated evidence that Mr. Boyd was engaging in abusive, threatening, and dangerous behavior, including by repeatedly putting his hands through the open cuff port. Mr. Boyd then refused to remove his hands from the cuff port so it could be closed. When Sgt. Surguy could not, at first, physically remove Mr. Boyd's hands from the cuff port, Sgt. Surguy deployed an approximate two-second burst of OC spray through the cuff port, the only place it could be effectively deployed.[3] Then, when Mr. Boyd still refused to remove his hand from the cuff port, and defied Sgt. Surguy's command to prepare to be cuffed up, Sgt. Surguy deployed a second one-second burst of OC spray. Next, Sgt. Surguy forcibly removed Mr. Boyd's hand from the cuff port and closed it.[4] Then, when Mr. Boyd continued to try to force

---

[3] Mr. Boyd alleged in his complaint that Sgt. Surguy deliberately sprayed his genitals with OC spray. But as shown in the video, Sgt. Surguy could only deploy the OC spray in the small part of the cuffport that was open because Mr. Boyd held it partway closed between attacks on Sgt. Surguy. Dkt. 35 at 2:00–2:20. The video does not support that Sgt. Surguy deliberately aimed at Mr. Boyd's genitals and there is no designated evidence to support Mr. Boyd's allegation.

[4] Mr. Boyd alleged in his complaint that Sgt. Surguy was "slamming his fist and then the cuff port on my wrist and hand, fingers, etc." Dkt. 1 at 3. This allegation is clearly contradicted by the video evidence.

the cuff port open, Sgt. Surguy and another officer placed a shield in front of the shower door.[5]

From the designated evidence, including Mr. Boyd's recalcitrance and threatening behavior, no reasonable jury could find that Sgt. Surguy used excessive force against Mr. Boyd. *See Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) ("[I]n order to survive a motion for summary judgment, the prisoner must have evidence that will support a reliable inference of wantonness in the infliction of pain."); *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.").

As for Sgt. Surguy not providing Mr. Boyd with a decontamination shower after he sprayed Mr. Boyd, "'the lingering effects of being pepper-sprayed or exposed to similar chemical agents" generally are not "objectively serious medical conditions.'" *Woodward v. Tierney*, No. 2:21-cv-00472-JPH-MKK, 2023 WL 5431751 at *3 (S.D. Ind. Aug. 23, 2023). Here, Mr. Boyd has not designated any evidence that he suffered any symptoms or lingering effects requiring Sgt. Surguy to provide an immediate decontamination shower. *See Smith v. Kind*, 140 F.4th 359, 369 (7th Cir. 2025) ("Many inmates may experience pepper spray as a relatively minor use of force.").

---

[5] Mr. Boyd alleged in his complaint that Sgt. Surguy "brought a mobile-shield and put it in front of my shower which prohibited air flow." Dkt. 1 at 3. This allegation is clearly contradicted by the video evidence; the shield had ample room around and through it for air flow, and it is apparent the shield would only prevent Mr. Boyd from reaching out through the cuff port and potentially harming others or spitting on others.

Moreover, the uncontested designated evidence is that within minutes of spraying Mr. Boyd, Sgt. Surguy asked a nurse to evaluate him, but Mr. Boyd was being threatening and abusive, so the nurse walked away. Similarly, the uncontested designated evidence is that the water was turned off in the shower stall because Mr. Boyd had deliberately flooded his cell recently and was threatening to do so again. The designated evidence further shows that Sgt. Surguy did not know that the water had been shut off. While "detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering, holding the inmate until the disturbance has clearly ended does not." *Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005) (citing *Williams v. Benjamin*, 77 F.3d 756, 764-65 (4th Cir. 1996)); *see also Reed v. Roberts,* 2024 WL 4200440, 5 (N.D. Ind. Sept. 13, 2024) (defendants were not deliberately indifferent for keeping a disruptive inmate in his cell for several hours following the application of OC spray to allow him time to calm down before escorting him to a decontamination shower).

Under this designated evidence, no reasonable jury could find that Sgt. Surguy violated the Eighth Amendment. *See Fillmore*, 358 F.3d at 504.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [30]. Final judgment will issue by separate order.

**SO ORDERED.**

Date: 9/1/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

DAVID L. BOYD
263311
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only